# ///  MIDLAND MORTGAGE

*A division of MidFirst Bank*

MARCH 1, 2023

AMY STEINMETZ &  ERIC STEINMETZ
1395 KELLY RD
STROUDSBURG PA 18360

# Read, sign and return.

Please return the enclosed documents to us by
MARCH 18, 2023

Dear Homeowner:

Congratulations, you are now ready to complete the COVID-19 home retention mortgage assistance plan documents. These documents must be returned by MARCH 18, 2023, and they include two parts: a HUD partial claim and a loan modification.

1. The HUD partial claim is an interest-free loan from HUD that doesn't have to be repaid until the first mortgage is paid off or until the borrower no longer owns the property.
2. The loan modification is an agreement between you and MidFirst Bank which modifies the existing note and related mortgage.

Enclosed for your review and signature are two copies of the HUD Partial Claim Promissory Note and Subordinate Mortgage/Deed of Trust and two copies of the Loan Modification Agreement.

Part 1, the HUD Partial Claim, is a new, interest-free loan from HUD that does not become due until the earlier of: (i) payoff or refinance of the Primary Loan; (ii) sale of the property; (iii) maturity of the Primary Loan or the date of its acceleration; or (iv) the Primary Loan is no longer insured by HUD.

The HUD Partial Claim includes the following amounts:

| Primary Loan Items Included in HUD Partial Claim | Primary Loan Amounts Included in HUD Partial Claim |
|---|---|
| Unpaid Interest | +$4,525.56 |
| Escrows Advanced | +$9,383.36 |
| Foreclosure Attorney Fees and Costs Now Due | +$0.00 |
| Principal | +$0.00 |
| (Less) Capitalized Amounts | -$8,521.17 |
| (Less) Suspense Funds | -$0.00 |
| **Total Partial Claim** | **$5,387.75** |

Part 2 is a Loan Modification Agreement that modifies the Primary Loan. The basic terms of the Primary Loan and the modified terms are as outlined below:

| | CURRENT TERMS | MODIFIED TERMS |
|---|---|---|
| Principal Balance | $172,401.32 | $180,922.49 |
| Interest Rate | 3.5000% | 6.6250% |
| Maturity Date | FEBRUARY 1, 2052 | MARCH 1, 2063 |
| | **CURRENT PAYMENT** | **MODIFIED PAYMENT** |
| Principal and Interest Payment | $779.09 | $1,075.38 |
| Escrow Payment | $947.17 | $988.48[1] |
| **Total Payment** | **$1,726.26** | **$2,063.86** |

*[1] – Subject to change at next Escrow Analysis*

# /// MIDLAND MORTGAGE

*A division of MidFirst Bank*

Please note that as part of the loan modification agreement, any Primary Loan principal included in the HUD partial claim will be applied to reduce the total unpaid principal balance of the Primary Loan. This amount will be repaid to HUD when the HUD Partial Claim becomes due as described above.

**To complete your loan modification and partial claim plan documents, all borrowers must follow the instructions on the next page exactly, and sign the documents in front of a notary public, then return to Midland two fully signed originals of the HUD Partial Claim documents and two fully signed originals of the Loan Modification Agreement.**

By signing the attached documents, you are acknowledging that you have read, understand, and agree to the terms of the Loan Modification Agreement and HUD Partial Claim, including the terms outlined above. Once the signed and notarized plan documents are received and accepted by Midland, we will waive all outstanding late charges through the effective date of your plan.

**The signed documents must be returned by MARCH 18, 2023.**

**Your first payment under the Loan Modification Agreement in the amount of $2,063.86 is due on or before APRIL 1, 2023.** You may send your first payment with the signed HUD Partial Claim documents and Loan Modification Agreements. Please be aware that failure to timely return all required documents by the deadline may disqualify you from the program. In such a case, the collection and/or foreclosure process may proceed without further notice to you. A loan modification may extend the term of the loan, or, in some cases, increase the payment amount. Please read the plan documents carefully, make sure you understand the modified terms, and contact us with any questions.

We report the status of the loan, including a loan modification, to credit reporting bureaus. Mortgage payment assistance plans may adversely affect credit scores. For more information about credit scores, go to consumer.ftc.gov.

If you have any questions, please call 800-552-3000 Monday – Friday 8 a.m. to 7 p.m. or Saturday 9 a.m. to 1 p.m. Central time.

Sincerely,

Midland Mortgage, a division of MidFirst Bank

**Notice:** If your loan was in default when MidFirst Bank obtained it, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to inform you that this communication is from a debt collector. If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of an automatic stay, this letter is not an attempt to collect the debt from you personally and is for informational purposes only.
**Notice to Connecticut and North Carolina Residents:** The purpose of this communication is to collect a debt.
**Notice to Vermont Residents:** This is an attempt to collect a debt and any information obtained will be used for that purpose.



# **/// MIDLAND MORTGAGE**

### *A division of MidFirst Bank*



# Read These Instructions Before Signing Your Plan Documents

## Helpful tips and reminders:

✓ Please follow these directions exactly or your mortgage assistance plan could be delayed!
✓ Two sets of the Loan Modification Agreement & Partial Claim Agreement are enclosed.
  Both will be returned to Midland using the mailing information below.
✓ USE BLACK INK ONLY, or your plan documents may be delayed or rejected.
✓ Do not change the documents in any way. Please call 800-552-3000 with any questions about the documents or the details of your mortgage assistance plan.

## Instructions for document signers:

☐ Sign all copies of the Loan Modification & Partial Claim in front of a notary.
☐ Sign names in black ink on all sets of documents exactly as they appear - don't forget middle initials, middle names, Jr./Sr., etc.
☐ Sign both sets of documents in all places where names appear.

## Instructions for the notary:

☐ Use black ink for the notary stamp and signature.
☐ Complete the date of acknowledgement.
☐ List your notary expiration date.
☐ Include your notary stamp and/or seal on the acknowledgement pages.
☐ Ensure the notary seal is in a blank space and does not cover text or signatures.

*By Overnight Courier (UPS, FedEx, Etc.)*

Midland Mortgage - A Division of MidFirst Bank
Attn: MAC
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118

*By US Mail*

Midland Mortgage - A Division of MidFirst Bank
Attn: MAC
P.O. Box 268806
Oklahoma City, OK  73126-8806

MM Loan Number: ▮▮▮▮▮

# PROMISSORY NOTE

| MARCH 1, 2023 | STROUDSBURG | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

**1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of **FIVE THOUSAND THREE HUNDRED EIGHTY-SEVEN DOLLARS AND 75 CENTS** (U.S. **$5,387.75**), to the order of Lender.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. PAYMENT OF PARTIAL CLAIM

**(A) Time.**
HUD will not require payment on the Partial Claim until the first of the following events occurs:

(i) The maturity of the Mortgage, **MARCH 1, 2063**, the sale of the Property, the Payoff of the Mortgage, or

(ii) if provided for under the Partial Claim note, the termination of FHA insurance, except that HUD will agree to subordinate the Partial Claim note to an FHA-Streamline Refinance.

**(B) Place.**
Payment shall be made at the **Office of Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 Seventh Street, SW, Washington, DC 20410** or any such other place as Lender may designate in writing by notice to Borrower.

01312023_356

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights or presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____          3/16/23
**AMY STEINMETZ**                           **Date**

_____          3/16/23
**ERIC STEINMETZ**                          **Date**

This Document Prepared By:
**MARDEE THOMPSON**
**MIDFIRST BANK, A FEDERALLY**
**CHARTERED SAVINGS ASSOCIATION**
**501 N.W. GRAND BLVD**
**OKLAHOMA CITY, OK 73118**


When Recorded Mail To:
**FIRST AMERICAN TITLE**
**DTO REC., MAIL CODE: 4002**
**4795 REGENT BLVD**
**IRVING, TX 75063**


**Tax/Parcel #: 07.89910**
_____ [Space Above This Line for Recording Data] _____
                                                        **FHA Case No.:** ███████
                                                        **Loan No:** ███████

**1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**
(herein "Property Address")

# PARTIAL CLAIMS MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **MARCH 1, 2023**. The mortgagor is **AMY STEINMETZ, ERIC STEINMETZ** ("Borrower"), whose address is **1395 KELLY RD, STROUDSBURG, PA 18360**. This Security Instrument is given to the **Secretary of Housing and Urban Development**, whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **FIVE THOUSAND THREE HUNDRED EIGHTY-SEVEN DOLLARS AND 75 CENTS (U.S. $5,387.75)**. This debt is evidenced by Borrower's note dated the

HUD-HAMP 01312023_356

same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **MARCH 1, 2063**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the County of **MONROE**, State of **PENNSYLVANIA**:

which has the address of , **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360** (herein "Property Address");

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No. **07.89910**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

HUD-HAMP 01312023_356

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further

demand and may invoke any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph or applicable law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Borrower: **AMY STEINMETZ**                                    3/16/23
                                                              **Date**

Borrower: **ERIC STEINMETZ**                                  3/16/23
                                                              **Date**

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

State of Pennsylvania
County of _____Monroe_____

This record was acknowledged before me on _____3/16/23_____ (date)
by AMY STEINMETZ, ERIC STEINMETZ (name(s) of individual(s)).

_____                          (Stamp)
Signature of notarial officer

Michael C Marelli
_____
Printed Name and Title of office

My commission expires: ___11/5/23___

Commonwealth of Pennsylvania - Notary Seal
Michael C Marelli, Notary Public
Monroe County
My Commission Expires November 05, 2023
Commission Number 1294470

HUD-HAMP 01312023_356

Page 5

**EXHIBIT A**

BORROWER(S): AMY STEINMETZ, ERIC STEINMETZ

LOAN NUMBER: ▮▮▮▮▮▮

LEGAL DESCRIPTION:

ALL THAT CERTAIN LOT, PARCEL OR PIECE OF LAND SITUATE IN THE TOWNSHIP OF HAMILTON, COUNTY OF MONROE, AND COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT AN IRON ON THE WESTERLY LINE OF RYAN LANE, SAID IRON BEING THE MOST NORTHERLY CORNER OF LOT 402 AS SHOWN ON MAP ENTITLED "FINAL PLAN, EAST VIEW ESTATES, SECTION III", DATED AUGUST 15, 1995 AND REVISED OCTOBER 9, 1995; THENCE ALONG LOT 402, "SOUTH 61 DEGREES" 39 MINUTES 18 SECONDS WEST 300.00 FEET TO AN IRON; THENCE ALONG EAST VIEW ESTATES, SECTION V, NORTH 22 DEGREES 00 MINUTES 00 SECONDS WEST 175 .52 FEET TO AND IRON ON THE SOUTHERLY LINE OF KELLY ROAD; THENCE ALONG THE SOUTHERLY LINE OF KELLY ROAD, NORTH 68 DEGREES 00 MINUTES 00 SECONDS EAST 200.39 FEET TO AN IRON, A POINT OF CURVATURE; THENCE ALONG THE SAME ON A CURVE TO THE LEFT HAVING A RADIUS OF 375 FEET AN ARC LENGTH OF 41.53 FEET TO AN IRON, A POINT OF REVERSE CURVATURE ON AN EASEMENT ARC, THENCE ALONG SAID EASEMENT ARC ON A CURVE TO THE RIGHT HAVING A RADIUS OF 40 FEET AN ARC LENGTH OF 62.83 FEET TO AN IRON, A POINT OF TANGENCY ON THE WESTERLY LINE OF RYAN LANE; THENCE ALONG THE WESTERLY LINE OF RYAN LANE, SOUTH 28 DEGREES 20 MINUTES 42 SECONDS EAST 110.00 FEET TO THE PLACE OF BEGINNING.

CONTAINING 1.059 ACRES, MORE OR LESS.

ALSO KNOWN AS: 1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360

Date: **MARCH 1, 2023**
Loan Number: ▮▮▮▮▮
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Borrower: **AMY STEINMETZ, ERIC STEINMETZ**

Property Address: **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     3/16/23
Borrower                                                      Date
**AMY STEINMETZ**

_____     3/16/23
Borrower                                                      Date
**ERIC STEINMETZ**

01312023_356

Date: **MARCH 1, 2023**
Loan Number: ████████
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
Borrower: **AMY STEINMETZ, ERIC STEINMETZ**
Property Address: **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed/or marketed by the Lender.

_____        3/16/23
**AMY STEINMETZ**                                                  Date

_____        3/16/23
**ERIC STEINMETZ**                                                  Date



# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
**PARTIAL CLAIMS MORTGAGE**

## BETWEEN:
**AMY STEINMETZ, ERIC STEINMETZ** (assignor/Mortgagor/grantor)

## AND:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
(assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
**451 SEVENTH STREET SW, WASHINGTON, DC 20410**

*By:* _____

*Print Name:* _____

*Title:* _____

This Document Prepared By:
**MARDEE THOMPSON**
**MIDFIRST BANK, A FEDERALLY**
**CHARTERED SAVINGS ASSOCIATION**
**501 N.W. GRAND BLVD**
**OKLAHOMA CITY, OK 73118**


When Recorded Mail To:
**FIRST AMERICAN TITLE**
**DTO REC., MAIL CODE: 4002**
**4795 REGENT BLVD**
**IRVING, TX 75063**


**Tax/Parcel #: 07.89910**
_____ [Space Above This Line for Recording Data] _____
**Original Principal Amount: $190,781.00**        **FHA\VA Case No.:** ███████
**Unpaid Principal Amount: $172,401.32**          **Loan No:** ███████
**New Principal Amount: $180,922.49**
**New Money (Cap): $8,521.17**


Property Address: **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Loan Modification Agreement ("Agreement"), made this 1ST day of MARCH, 2023, between AMY STEINMETZ, ERIC STEINMETZ ("Borrower"), whose address is 1395 KELLY RD, STROUDSBURG, PA 18360 and MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION ("Lender"), whose address is 501 N.W. GRAND BLVD, OKLAHOMA CITY, OK 73118, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated JULY 27, 2015 and recorded on AUGUST 21, 2015 in INSTRUMENT NO. 201519588 BOOK 2458 PAGE 5912, of the OFFICIAL Records of MONROE COUNTY, PENNSYLVANIA, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360
(Property Address)
the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **MARCH 1, 2023** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$180,922.49**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest and other amounts capitalized, which is limited to escrows, and any legal fees and related foreclosure costs that may have been accrued for work completed, in the amount of U.S. **$8,521.17**.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.6250%**, from **MARCH 1, 2023**. The Borrower promises to make monthly payments of principal and interest of U.S. **$ 1,075.38**, beginning on the **1ST** day of **APRIL, 2023**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **MARCH 1, 2063** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or

transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.**

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

In Witness Whereof I have executed this Agreement.

_____

Borrower: **AMY STEINMETZ**

3/16/23
**Date**

_____

Borrower: **ERIC STEINMETZ**

3/16/23
**Date**

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

State of Pennsylvania
County of _____Monroe_____

This record was acknowledged before me on _____3/16/23_____ (date)
by AMY STEINMETZ, ERIC STEINMETZ (name(s) of individual(s)).

_____

Signature of notarial officer

(Stamp)

_____Michael C Marelli_____

Printed Name and Title of office

My commission expires: _____11/5/23_____

> Commonwealth of Pennsylvania - Notary Seal
> Michael C Marelli, Notary Public
> Monroe County
> My Commission Expires November 05, 2023
> Commission Number 1294470

In Witness Whereof, the Lender has executed this Agreement.

**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**

By _____     _____     _____
                                        (print name)          Date
                                        (title)

_____ [Space Below This Line for Acknowledgments] _____

**STATE OF** _____
**COUNTY OF** _____

The instrument was acknowledged before me on _____ (date)

by _____, as _____ of

**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION.**

_____
Notary Public

Printed Name: _____

My commission expires: _____

**THIS DOCUMENT WAS PREPARED BY:**
**MARDEE THOMPSON**
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**
**501 N.W. GRAND BLVD**
**OKLAHOMA CITY, OK 73118**

# EXHIBIT A

BORROWER(S): AMY STEINMETZ, ERIC STEINMETZ

LOAN NUMBER: 58178788

LEGAL DESCRIPTION:

ALL THAT CERTAIN LOT, PARCEL OR PIECE OF LAND SITUATE IN THE TOWNSHIP OF HAMILTON, COUNTY OF MONROE, AND COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT AN IRON ON THE WESTERLY LINE OF RYAN LANE, SAID IRON BEING THE MOST NORTHERLY CORNER OF LOT 402 AS SHOWN ON MAP ENTITLED "FINAL PLAN, EAST VIEW ESTATES, SECTION III", DATED AUGUST 15, 1995 AND REVISED OCTOBER 9, 1995; THENCE ALONG LOT 402, "SOUTH 61 DEGREES" 39 MINUTES 18 SECONDS WEST 300.00 FEET TO AN IRON; THENCE ALONG EAST VIEW ESTATES, SECTION V, NORTH 22 DEGREES 00 MINUTES 00 SECONDS WEST 175 .52 FEET TO AND IRON ON THE SOUTHERLY LINE OF KELLY ROAD; THENCE ALONG THE SOUTHERLY LINE OF KELLY ROAD, NORTH 68 DEGREES 00 MINUTES 00 SECONDS EAST 200.39 FEET TO AN IRON, A POINT OF CURVATURE; THENCE ALONG THE SAME ON A CURVE TO THE LEFT HAVING A RADIUS OF 375 FEET AN ARC LENGTH OF 41.53 FEET TO AN IRON, A POINT OF REVERSE CURVATURE ON AN EASEMENT ARC, THENCE ALONG SAID EASEMENT ARC ON A CURVE TO THE RIGHT HAVING A RADIUS OF 40 FEET AN ARC LENGTH OF 62.83 FEET TO AN IRON, A POINT OF TANGENCY ON THE WESTERLY LINE OF RYAN LANE; THENCE ALONG THE WESTERLY LINE OF RYAN LANE, SOUTH 28 DEGREES 20 MINUTES 42 SECONDS EAST 110.00 FEET TO THE PLACE OF BEGINNING.

CONTAINING 1.059 ACRES, MORE OR LESS.


ALSO KNOWN AS: 1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360

Date: **MARCH 1, 2023**
Loan Number: ████████
Lender: **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**

Borrower: **AMY STEINMETZ, ERIC STEINMETZ**

Property Address: **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____   3/16/23
Borrower                                    Date
**AMY STEINMETZ**

_____   3/16/23
Borrower                                    Date
**ERIC STEINMETZ**

Date: **MARCH 1, 2023**
Loan Number: ███████
Lender: **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**
Borrower: **AMY STEINMETZ, ERIC STEINMETZ**
Property Address: **1395 KELLY RD, STROUDSBURG, PENNSYLVANIA 18360**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____  3/16/23
**AMY STEINMETZ**                                                          Date

_____  3/16/23
**ERIC STEINMETZ**                                                         Date

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
LOAN MODIFICATION AGREEMENT (MORTGAGE)

## BETWEEN:
AMY STEINMETZ, ERIC STEINMETZ (assignor/Mortgagor/grantor)

## AND:
MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION
501 N.W. GRAND BLVD
OKLAHOMA CITY, OK 73118

*By:* _____

*Print Name:* _____

*Title:* _____

